

**Michael J. Willemin**
mwillemin@wigdorlaw.com

June 13, 2025

**VIA ECF**

The Honorable Rosella A. Oliver
United States District Court, Central District of California
Roybal Federal Building and United States Courthouse
255 E. Temple St.
Los Angeles, CA, 90012

Re: Vanessa LeMaistre v. Leland T. Wayne, Case No. 2:24-cv-10378 (RGK)(RAOx)

Dear Judge Oliver:

Plaintiff Vanessa LeMaistre ("Plaintiff" or "Ms. LeMaistre") respectfully submits this letter brief pursuant to this Court's June 10, 2025 Order Directing Letter Briefing on Discovery Disputes. See Dkt No. 38.

Defendant has repeatedly refused to meet his basic obligation as a civil litigant in the federal court system. He has, instead, engaged in consistent bad faith tactics while refusing to preserve, gather and produce discovery, and has also refused to appear for his noticed deposition. Defendant's bad faith conduct has caused Plaintiff immeasurable prejudice. Defendant has used this Court's IDC process as a weapon to prevent these issues from being raised before the Court by refusing to provide available dates, refusing to respond to emails,[1] and by taking positions that are plainly in contravention with the Federal Rules of Civil Procedure in an effort to run out the discovery clock.

Plaintiff submits this letter motion detailing the outstanding discovery disputes she wishes to raise with the Court: (i) Defendant's failure to produce any Electronically Stored Information ("ESI"); (ii) Defendant's deficient responses to various written discovery requests; (iii) Defendant's refusal to sit for his deposition on the noticed dates; and (iv) Plaintiff's motion to quash Defendant's inappropriate and overbroad subpoenas. While first and foremost, Plaintiff seeks full and fair discovery, and simply wants to prosecute her case and uncover the truth, the confluence of bad faith behavior outlined below also substantiates a request for sanctions against Defendant pursuant to Rule 37.

[1] The Court's Order rightly expresses frustration with the parties' failure to comply with the directive to fill out the Court's IDC form and provide a "very brief joint description" of the discovery disputes. See Dkt. No. 38. However, Plaintiff's counsel provided Defendant with the IDC form after receiving the Court's directive. Defendant did not respond, which prevented Plaintiff's ability to abide by this Court's Order. This type of obfuscation has been Defendant's *modus operandi* throughout this entire litigation.





**A. <u>Electronically Stored Information</u>**

As in nearly all litigation, Plaintiff has requested that Defendant search and produce ESI relevant to the facts of the case. She did so through her February 19, 2025 Requests for Production of Documents ("RFP"), which explicitly noted that the requests were for documents and ESI in Defendant's possession and control, or in the possession and control of Defendant's agents. <u>See</u> Ex 1.[2] On March 11, 2025, Plaintiff provided Defendant with proposed search terms for ESI production, and on March 20, 2025, provided a fulsome ESI protocol to govern the case. <u>See</u> Exs. 2-3. Defendant refused to engage in any discussion related to Defendant's ESI discovery obligations and has taken the position that he does not have any obligation to engage in ESI because a formal request for his physical devices was not proffered. There is no common sense or legal basis for Defendant's position.

This position is especially outrageous because it is in direct contravention of this Court's directives and order during the parties' April 4, 2025 IDC conference. As Your Honor is aware, during that conference, Defendant's counsel stated on the record that none of Defendant's devices had been imaged. He also represented that Defendant left one cell phone with an unnamed attorney in another firm but would not (or could not) provide any additional clarification. Your Honor immediately made clear that Defendant's devices should have already been identified, imaged and preserved for the production of relevant materials; ordered the parties to meet and confer on an ESI protocol and search terms; and directed counsel to speak with our clients about their discovery obligations. Indeed, the Court's written Order states in part: "The parties are directed to complete meet and confer efforts on an ESI protocol by April 14, 2025. Following agreement on an ESI protocol, the parties are directed to meet and confer on search terms in an efficient manner so that the ESI search, review, and production process can begin." <u>See</u> Dkt. No. 29. This Court plainly expected and ordered both parties to engage in ESI discovery.

Despite this Order, Defendant's complete obfuscation continues to this day. Defendant's counsel, Lawrence Hinkle ("Hinkle"), confirmed by email on April 15, 2025 his agreement with the ESI protocol. It was immediately executed by Plaintiff's counsel; yet, Defendant had no intention of abiding by its terms. Instead, Defendant's counsel continues to refuse to: (1) identify the relevant devices that his client has possessed; (2) identify all (or any) sources of ESI; (3) confirm whether and when any devices have been imaged and/or ESI sources have been preserved; or (4) formally execute the ESI protocol despite agreeing to its terms by email.

On April 17, 2025, Plaintiff informed Defendant that given his failure to engage in discovery related to ESI, she intended to prepare an IDC request. On April 23, 2025, in addition to sending Defendant a deficiency letter related to discovery issues other than ESI, counsel provided Plaintiff's portion of the IDC related to ESI discovery and requested that Defendant

---

[2] For example, the Definitions state that the terms "document(s)" and "electronically stored information" or "ESI" are defined to be synonymous in meaning and equal in scope to the usage of these terms in Federal Rule of Civil Procedure 34(a), including, without limitation, data or data compilation stored in any medium. <u>Id</u>.





provide the required three dates/times that they were available for the IDC. On April 25, counsel again requested Defendant's available dates, noting that if Defendant failed to respond, Plaintiff would take that to mean that Defendant did not intend to provide a response. Defendant did not respond, and Plaintiff filed an IDC request that evening. While we apologize to this Court for filing an IDC that did not comply with Your Honor's Rules, Defendant has made compliance impossible, and he should not be permitted to regularly engage in gamesmanship to frustrate and delay Plaintiff's ability to get these issues before the Court. This refusal to respond to an IDC proposal and to provide availability for an IDC again happened on May 12, 2025, after parties conferred on the ESI issue (in addition to other discovery issues).

Instead of responding to either of the existing IDC requests from Plaintiff, on May 13, 2025, Defendant then sent Plaintiff his own IDC draft concerning other issues and suggested that both parties provide their available dates and respective responses by May 16, 2025. Plaintiff's counsel agreed to do so for all issues other than ESI, given that it had been nearly a month since Plaintiff first provided her initial IDC draft concerning ESI and nearly two months since Plaintiff had taken efforts to push ESI discovery forward. Plaintiff responded to Defendant's IDC draft and provided available dates, but Defendant refused to provide his position or available dates for Plaintiff's existing IDC request prior to May 16, 2025 in response. As a result, on May 14, 2025, Plaintiff filed a renewed request for an IDC related to the outstanding ESI issues, but was again unable to provide the Court with the three dates available to both parties. Defendant's tactic of just failing to engage with Plaintiff's counsel to abide by this Court's process is not an accident. It is yet another way for Defendant to obfuscate the discovery process. Defendant's bad faith behavior continues to significantly harm and prejudice Plaintiff.

**B. Discovery Responses**

On March 28, 2025, Defendant produced three documents in response to Plaintiff's RFPs. To this day, those three documents encompass the entirety of Defendant's production. Despite producing only three bates-stamped documents, Defendant's counsel not only used other bates-stamped documents that were never produced at Plaintiff's deposition but also initially claimed on the record that they had been produced. That Defense counsel is in possession of additional documents and has not met its continuing obligations to produce them on a rolling basis only further underscores Defendant's dilatory and obstructionist tactics in the discovery process. In an effort to justify this plainly lacking production, Defendant has provided responses to written discovery requests that are illogical and plainly violate the Federal Rules.

**i. Interrogatory Request No. 12**

Interrogatory No. 12 asks Defendant to identify all social media accounts he has used from 2015-present. Defendant refused to provide responsive information. Defendant's social media is directly relevant to this matter, as the Complaint alleged that Defendant's social media references a steady pattern of posts relating to drugging and sexually assaulting women and underage girls. In response to Plaintiff's deficiency letter, Defendant stated: "What is odd about this Rog too is that you purport to already know the identity of Mr. Wayne's social media sites. You have spent





significant efforts referring to posts from Mr. Wayne's social media accounts to insinuate that he has engaging in wrongdoing. You have also acknowledged that Mr. Wayne's social media accounts are public, therefore, it is baffling that you are wasting the parties' time and resources on this issue." Yet, Plaintiff's knowledge about one of Defendant's public social media accounts—which is based significantly on different social media users' compilations of Defendant's now-deleted posts—has no relevance to whether Defendant maintains other social media accounts, and given the public statements made on his social media account that we are aware of, it is certainly possible, if not likely, that Defendant has used other accounts–public or private–to make statements that are relevant to this matter. It is the obligation of Defendant to identify and disclose the existence of these other accounts, or in the alternative, to confirm if they do not, in fact, exist.

**ii. RFPs with improper responses**

In his Responses to numerous requests for documents (Request Nos. 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 18, 20, 21, 22, 23, 24, 30, 32, 37, 38, 39, and 40), Defendant improperly responds that he "is unaware of any such documents." Defendant's awareness of such documents is not the standard for discovery responses. Instead, Defendant must represent that he conducted a reasonable search for responsive documents and definitively state whether responsive documents exist. If no responsive documents exist, Defendant must say so. See Caccamise v. Credit One Bank, N.A., No. 18 Civ. 971 (JLS)(BLM), 2019 WL 1903219, at *3 (S.D. Cal. Apr. 26, 2019) (holding that a party may not limit its response to state that it is "unaware of responsive" documents because "[t]his phrase is unclear. If Defendant has conducted a diligent search and inquiry…and no responsive documents were found, Defendant should so state").

While Defendant's counsel agreed on May 12, 2025 to amend his Responses to say that Defendant is "unaware of the existence of any responsive documents [but] conducted a reasonable search for responsive documents and no responsive documents were found," he still has not done so. More importantly, given Defendant's position on ESI, it is impossible for Defendant to state that a reasonable search has been conducted and we ask that Defendant be required to describe the steps taken so that Plaintiff can determine whether a diligent search was conducted.

**iii. RFPs Concerning Defendant's Social Media: 14, 15, 16, 17, 19, and 29**

These Requests seek documents, communications, and ESI related to Defendant's social media posts that reference drugging and sexually assaulting women and underage girls, and his post that he could not be a "pedophile." They seek documents that are referenced in the Complaint and Answer. Defendant did not deny that he wrote the tweets identified in the Complaint, and the Requests are reasonably tailored to request only the specific tweets and communications related to those specific tweets that are identified in the Complaint. Defendant's publicly available tweets included references to sexual assault (e.g., "She gon suck me whether she like it or not") and sexual depravity in general (e.g., "age aint nothing but a number" and "walking through the grocery store with both hands in my khakis like a true pedophile").







For each of these Requests, Defendant objected and stated: "Mr. Wayne will not search for or produce any documents responsive to this request." He has not provided any substantive reasoning for this position, except to take the opportunity to cast aspersions on Plaintiff and victim-shame his accuser. Defendant's references to sexually assaulting women, giving women drugs, underage girls, and so forth are directly relevant to Plaintiff's allegations of sexual assault, as they show a pattern and practice and *modus operandi*, and must be searched for and produced. In addition, documents related to sexual assault and underage girls (as any sexual activity with a minor is, by definition, illegal) are relevant and responsive under Fed. R. Evid. 415, which specifically permits "evidence that the party committed any other sexual assault or child molestation" in a civil case involving sexual assault or child molestation, in addition to Fed. R. Evid. 404(b)(2) which allows character evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

**iv. <u>RFPs Concerning Defendant's Drug Use: 25, 26, 27 and 31</u>**

These Requests seek documents related to Defendant's alleged drug use. Like Defendant's social media history, communications, documents and ESI related to his drug use are directly relevant to this matter, as Plaintiff alleged that Defendant's drug use caused a change in his behavior and made his actions less predictable. While Plaintiff did not specifically allege that she was drugged by Defendant prior to the sexual assault, she did allege that she had only had half a Xanax and was given one shot of alcohol before blacking out. In addition, discovery that has been produced includes a statement by another woman that she was "roofied" and sexually assaulted by Defendant. As a result, Defendant's behavior and drug use are directly relevant to the allegations.

**v. <u>Request for Admission No. 7</u>**

This Request directly asked Defendant to admit that he wrote the tweets identified in paragraph 33 of the Complaint. Defendant stated that "Mr. Wayne admits that the tweets described at Paragraph 33 of Plaintiff's Complaint were posted on his twitter account, but denies that he wrote the lyrics to the song included in the tweet." This is plainly non-responsive. The question of whether he wrote *the tweets* is a plain and simple request; whether the content of the tweets are of his own creation is irrelevant. Moreover, there are a dozen tweets at issue in paragraph 33; they do not represent one song lyric. Defendant must admit or deny whether he wrote the tweets. To the extent there are tweets he did not write, Defendant must specifically admit or deny each tweet.

**C. <u>Defendant's Deposition</u>**

On April 25, 2025, Plaintiff noticed Defendant's deposition to take place on May 23, 2025 in California.[3] Defendant's counsel never raised an issue with the deposition notice or date. However, two-and-a-half weeks later, during the parties' May 12, 2025 meet and confer, Hinkle refused to confirm that Defendant would appear and stated that he "hoped" he would but that he

---

3 Defendant's counsel unilaterally noticed Plaintiff's deposition for May 21, 2025 in Los Angeles. Plaintiff sat for her deposition on May 21 and May 22, 2025.





had not spoken to Defendant in several weeks. On May 15, 2025–just one week before Defendant's noticed deposition–Hinkle said that Defendant would not appear for his noticed deposition, as his "schedule is very hectic and naturally he has a number of contractual obligations and limited availability, especially on short notice." Notably, Defendant's counsel received the notice three weeks prior and the deposition was noticed more than one month in advance. Hinkle then stated that Defendant would appear on May 29, 2025 in Atlanta, Georgia – a location thousands of miles from the Court and with no relationship to this litigation, and a date that could not work for Plaintiff in any event. It was clearly an effort to delay the deposition while attempting to appear as if Defendant was providing a viable alternative – a tactic repeatedly used as Plaintiff continued to try to re-schedule Defendant's deposition. Plaintiff asked Defendant's counsel to provide dates in May for either New York (where undersigned counsel is located) or California.

As Defendant was repeatedly informed, it was important to Plaintiff's counsel to hold the deposition in May not only because discovery is scheduled to close on June 24, 2025, but also because counsel will be on trial in New York beginning June 16, 2025, which is expected to last at least one week and likely into the following week given the Juneteenth holiday. Nonetheless, Defendant's counsel then offered May 30, 2025 in Atlanta or June 13, 2025 in Los Angeles – refusing to provide a date in May in either New York or California, and providing a date in June in Los Angeles just one business day before Plaintiff's counsel trial begins in New York, which is, again, plainly an effort to further frustrate Plaintiff's ability to take Defendant's deposition while trying to appear as if viable alternatives are being offered.

Plaintiff's counsel then provided seven dates in June: June 4, 5, 6, 7, 8, 9, and 10. Hinkle responded that they would only agree to dates after June 13. Plaintiff's counsel again reminded Hinkle that he was beginning trial on June 16 and given that discovery was scheduled to close on June 24, the deposition could not be scheduled after June 13. After receiving no response for a week, Plaintiff re-noticed Defendant's deposition for June 5. Defendant again asserted that he would only appear for a deposition after June 13 and stated that he would not communicate with Plaintiff's counsel about deposition dates unless dates after June 13 were provided. On June 2, Plaintiff's counsel informed Hinkle that we would agree to reschedule Defendant's deposition for June 19 or 20 to be held in Los Angeles or New York. Plaintiff then sent a corrected email stating that the dates identified were meant to be June 26 or 27 – which were the only dates after June 13 that Plaintiff's counsel could be certain trial would be complete. However, given that the dates provided were a few days after the expected close of discovery, Plaintiff's counsel said that the dates would require an agreement to extend discovery by a few days.

After Plaintiff's counsel was forced to follow up with Defendant three times and received no response, on June 10, Hinkle then inexplicably responded that Defendant was available for his deposition on June 17, 2025 despite being repeatedly told that Plaintiff's counsel was on trial that week, and then stated that Defendant "was not willing to agree to" extend the discovery cut-off date to hold the deposition on June 26 or 27. As of today, Plaintiff's counsel still has not been able to schedule Defendant's deposition despite providing two deposition notices and a total of eight available dates.





**D. Plaintiff's Motion to Quash Defendant's Subpoenas**

On April 22, 2025 and April 23, 2025, Defendant served seven subpoenas on employers for whom Ms. LeMaistre worked after the sexual assault. See Ex. 4.[4] On April 23, 2025, Plaintiff's counsel immediately notified Defendant that we intended to move to quash all of the subpoenas and asked Defendant to confirm that they would not serve the subpoenas until we had the opportunity to meet and confer and obtain a ruling from the Court. Defendant failed to respond; did not engage in the meet and confer process in violation of Local Rule 37.1, which requires counsel to confer with the moving party within ten days after a meet and confer is requested; and moved forward with serving all subpoenas.

Defendant's requests are sweeping, including a time frame of January 1, 2016 to present, and seek irrelevant documents such as personnel files, background checks, disciplinary records, communications with Plaintiff and her employer, information concerning leaves of absence and accommodation requests, and separation documents. This is a sexual assault case that has absolutely no connection to an employment relationship of any kind. Defendant's subpoenas not only seek information completely irrelevant to Plaintiff's claim that Defendant sexually assaulted her, but also broadly seek all documents and communications from seven employers. The requests are not limited to information pertaining to Defendant, nor are they limited to anything at all related to this matter. Even if it could be somehow argued, for example, that Plaintiff's compensation and benefits at her employers after her sexual assault are relevant to her damages, Plaintiff already stipulated that she is not seeking damages related to lost wages. Defendant has asserted that he is entitled to the requested documents because he believes that Plaintiff "has a troubled past." Such an admission is direct evidence that the subpoenas are nothing more than an effort to harass and intimidate Plaintiff and should not be tolerated. See Mattel Inc. v. Walking Mountain Prods., 353 F.3d 792, 814 (9th Cir. 2003) (holding a subpoena may be quashed if it is "served for the purpose of annoying and harassment and not really for the purpose of getting information."); see also Bickley v. Schneider Nat., Inc., No. C 08-5806 (JSW) (JL), 2011 WL 1344195, at *2 (N.D. Cal. Apr. 8, 2011) 2011 WL 1344195, at *3 (defendant's overbroad subpoenas supported the reasonable inference that they "were intended to harass Plaintiffs and constitute little more than an abuse of the discovery process."). In addition, Plaintiff's employment has no possible relevance to the claims in this matter, and her right to privacy should not be invaded on this basis alone. Even in the employment dispute context, this Circuit has regularly barred the use of subpoenaed materials from employers on privacy grounds. See, e.g., Bickley, 2011 WL 1344195, at *2 ("An employee's personnel records and employment information are protected by the constitutional right to privacy."); Hightower v. S. California, Permanente Grp., No. 22 Civ. 181 (JWH) (KKx), 2022 WL 3574448, at *5 (C.D. Cal. July 18, 2022) (recognizing that notifying a employers of the filing of a claim can be considered retaliatory because it would chill employees' willingness to pursue claims).

---

[4] Plaintiff attaches one such subpoena to this motion to support her position that the requests are invasive, sweeping, and inappropriate. All seven subpoenas are identical.





The Court should quash these subpoenas as abusive, harassing, overbroad, and not appropriately tailored to elicit relevant or admissible information in this litigation.

**E. CONCLUSION**

Defendant's well-documented efforts to obstruct discovery and avoid sitting for his deposition is sanctionable. The record is replete with evidence of Defendant's bad faith refusal to participate in the discovery process. Now, as this case approaches the close of discovery, Defendant has continued to refuse to do what he is obligated to do under the FRCP and the Court's April 4, 2025 Order by failing to conduct a good faith search for responsive documents, explain what has been done to preserve and produce responsive documents, actually produce documents, and sit for his deposition. As a result, Plaintiff does not have material evidence that she is entitled to because of Defendant's campaign of obstruction and gamesmanship. Federal Rule of Civil Procedure 37 "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983).

We respectfully request the Court order Defendant to correct his non-compliance with the discovery set forth above, and that the Court also grant Plaintiff's motion to quash Defendant's inappropriate subpoenas to Plaintiff's employers. In addition, we respectfully request that the Court consider sanctions against Defendant for his repeated bad faith behavior throughout this process, including rendering a default judgment against Defendant. See Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983) (explaining that Federal Rule of Civil Procedure 37 "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules").

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Michael J. Willemin