MICHAEL J. WILLEMIN (NY SBN 4985610)
mwillemin@wigdorlaw.com
MONICA HINCKEN (NY SBN 5351804)
mhincken@wigdorlaw.com
(Admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Tel.: (212) 257-6800
Fax.: (212) 257-6845

ROBERT J. GIRARD II (BAR NO. 216949)
rgirard@girardbengali.com
OMAR H. BENGALI (BAR NO. 276055)
obengali@girardbengali.com
**GIRARD BENGALI, APC**
355 S. Grand Street, Suite 2450
Los Angeles, CA 90071
Tel.: (323) 302-8300
Fax.: (323) 302-8310

*Attorneys for Plaintiff Vanessa LeMaistre*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VANESSA LEMAISTRE,<br><br>Plaintiff,<br><br>vs.<br><br>LELAND WAYNE,<br><br>Defendant. | Case No. 2:24-cv-10378 RGK(RAO)<br><br>**PLAINTIFF'S PROPOSED TOPICS FOR DISCUSSION AT THE HOUSEKEEPING SESSION PRIOR TO THE START OF TRIAL**<br><br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br><br>Complaint Filed: October 29, 2024<br>Trial Date: September 23, 2025 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that as soon as the matter may be heard, in Courtroom 850 of the Edward R. Roybal Federal Building and United States Courthouse, 255 E. Temple Street, Los Angeles, California, Plaintiff Vanessa LeMaistre ("Plaintiff" or "LeMaistre") will, and hereby does, propose that the following topics must be discussed and decided at the housekeeping session to be held prior to the start of trial: (1) scope of expert testimony, (2) Plaintiff's proposed addition of two exhibits, (3) exhibit redactions, and (4) providing the jury with a written transcript of the audio Defendant seeks to introduce at trial (if said audio is in fact introduced).

I. **The Scope of Expert Testimony**

    A.     **Dr. Elizabeth Loftus**

Dr. Loftus provides an expert report based on the false premise that Plaintiff's memory of the assault is "newfound" and provides a number of different, incompatible "possible" reasons for the "newfound" memories, ranging from "exposure to media information" to a "deliberate attempt to deceive." See Dkt No. 55-1. Yet, there is no evidence in this case that Plaintiff did not remember the assault until a later date; there has never been a "newfound" memory. Instead, the evidence in the record details that Plaintiff reported the sexual assault at issue several times. Despite this fact, Dr. Loftus, who never spoke to or met Plaintiff, came to the conclusion that "there are significant memory issues in the current case." Id.

The Court in R.D. v. Shohola, Inc., No. 3:16 Civ 01056, 2019 WL 6053223, at *10-11 (M.D. Pa. Nov. 15, 2019) excluded Dr. Loftus' expert testimony after a Daubert hearing for similar errors. First, the Court noted that "Dr. Loftus has never examined, tested, or even met [Plaintiff]. Thus, her opinions rest upon a review of selected documents provided to her by counsel." Id. The same is true here, and notably, it is not even clear what specific records Dr. Loftus reviewed, as the report states only that she reviewed the complaint, Plaintiff's deposition, and medical records. See Dkt No. 55-1.

Second, the Court found that Dr. Loftus' report was only able to explain "how suggestion *may* lead individuals to the construction of false memories, and how suggestion *may* have done so in this case" (emphasis in original). R.D. v. Shohola, Inc., at *10-11. As a result, the Court found that such expert testimony "case in terms of 'mays' and 'mights' is inherently less reliable than opinions stated with a reasonable degree of scientific certainty." Id. The same is again true here, as Dr.

PLAINTIFF'S PROPOSED TOPICS FOR DISCUSSION AT THE HOUSEKEEPING SESSION PRIOR TO THE START OF TRIAL

3

Loftus only describes "possibilities" and suggests potential meanings without any concrete reasoning or explanation. See Dkt No. 55-1.

Third, the Court found that "many of the propositions about which Dr. Loftus proposed to testify are matters well within the ken of a lay jury. For example, the notion that memories deteriorate over time is well within the understanding of a jury without the aid of an expert." R.D. v. Shohola, Inc., at *10-11 citing United States v. Heine, 2017 WL 5260784 (D. Or. Nov. 13, 2017). Likewise, the concept that witnesses can vehemently recall events in a faulty matter is readily understood and is something that falls within the common experience of jurors." Id.

Finally, and most relevant here, the Court found that "the proffered testimony set forth in Dr. Loftus' report simply do not fit the facts of this case [because] Dr. Loftus proposed to debunk the idea of repressed memory, but the plaintiff does not allege that he recovered a repressed memory." Id. As detailed *supra*, Dr. Loftus' report is based upon a material misstatement of the evidence, as Plaintiff has never alleged that she did not remember the sexual assault, nor is repressed memory at all an issue in this case.

The testimony of Dr. Loftus should be excluded based on these reasons alone. However, it is also evident that her conclusion that "there are significant memory issues in the current case" is directly at odds with this Court's instruction about what is permissible expert testimony during the initial pre-trial conference on September 8, 2025:

> You never ask an expert how they evaluate this case, what the defendant or plaintiff should have done in this case. All they can testify is to their expertise on hypotheticals, and then it's up for the attorneys to prove up their hypothetical. You don't ask the witness whether or not the

hypothetical applies to this case. That's for the jury to determine. We don't take that away from the jury on it.

See Ex. 1, Transcript of September 8, 2025 pre-trial conference.

Defendant states that Dr. Loftus will provide testimony on several topics that plainly are in contravention of this Court's September 8, 2025 Order and/or are not even identified in her report, including (1) "[h]er assessment of Plaintiff's account of the alleged sexual assault and whether Plaintiff's memory presentation is consistent with scientifically understood patterns of memory distortion or impairment," (2) "[t]he potential impact that the long passage of time an exposure to post-event information may have on the accuracy of Plaintiff's memory," (3) [w]hether Plaintiff's allegations are consistent with her reporting of events; and (4) "[h]ow Plaintiff's conversations about Defendant, psychotherapy that involved efforts to recall memories, exposure to media information, and related activities caused Plaintiff to develop false recollections of the events." See Dkt. No. 80. With respect to number 3, this subject matter does not have anything to do with memory so it is unclear why a memory expert would be asked to testify about such a topic, while topic 4 includes contains a list of potential influences that Dr. Loftus identifies may affect a "person" without any direct correlation to the Plaintiff.

Finally, despite the facts of this case, Dr Loftus' report does not even contain any information about how human memory functions in a high-stress or traumatic environment, including psychological factors that may affect the accuracy, timing and clarity of memory formation and retrieval.

Dr. Loftus should not be permitted to testify based on all of the foregoing. To the extent her testimony is allowed, it must be limited to ensure it is in compliance with the Federal Rules of Evidence and this Court's September 8, 2025 Order. See Ex. 1.

### B. Dr. April Thames

Dr. Thames' expert report purportedly is provided to "assess the presence, severity, and prognosis of any psychological or emotional harm" Plaintiff experienced as a result of the alleged sexual assault in this case. See Dkt. No. 55-1. However, the report goes far beyond such an assessment and opines on topics far afield from her expertise, goes beyond the scope about whether the alleged sexual assault caused harm, and attempts to improperly characterize Plaintiff's credibility.

As the Court indicated, experts cannot testify about their perceptions of the case. Yet, Dr. Thames' expert report includes critical conclusions about Plaintiff's credibility based on misstatements of the records and cherry-picked information provided to support her narrative. For example, Dr. Thames claims that the fact that Plaintiff allegedly did not tell her therapist about the alleged assault "significantly undermines the credibility of her claims." Id. Yet, not only did Plaintiff tell her therapist about the sexual assault, which is supported by the medical records that Dr. Thames allegedly reviewed, Plaintiff also informed Dr. Thames during her recorded interview that she reported it to her therapist in late 2016 and explained the conversation with her therapist in great detail. Interestingly, Dr. Thames failed to include that detail in her report. Id.

Further, Dr. Thames also opines in detail about the effect of ayahuasca. Yet, not only did Dr. Thames never speak to Plaintiff about ayahuasca, but there is also no suggestion of any kind that Dr. Thames has any expertise about the use of ayahuasca in general, and she certainly should not be able to testify that it had the potential to specifically distort Plaintiff's ability to remember the assault.

In addition, Dr. Thames directly opines on multiple occasions about Plaintiff's credibility, stating that there are "additional concerns regarding Ms. LeMaistre's credibility" and that "substantial discrepancies…undermine the

PLAINTIFF'S PROPOSED TOPICS FOR DISCUSSION AT THE HOUSEKEEPING SESSION PRIOR TO THE START OF TRIAL

6

reliability and plausibility of the allegations." Id.  There is no question that these are statements that improperly go to Plaintiff's credibility and are outside the scope of what is permitted in expert testimony.

Defendant states that Dr. Thames will provide testimony on several topics that plainly are in contravention of this Court's September 8, 2025 Order and/or go far beyond what is permissible, including (1) "[h]er assessment of Plaintiff's recollection of Defendant's alleged sexual assault of Plaintiff, including the ongoing psychological distress Plaintiff attributes to the incident," which goes beyond the scope of whether any alleged assault caused Plaintiff's emotional harm today; (2) "[h]ow Plaintiff's post-incident efforts to contact and communicate with Defendant is consistent with scientifically understood patterns of sexual assault victim behavior, which also goes beyond the scope of whether any alleged assault caused Plaintiff emotional harm today; (3) "[h]ow Plaintiff's engagement in impulsive and risky behaviors support a pattern of affectively driven, dysregulated behavior and maladaptive relational dynamics often seen in trauma-impacted individuals with comorbid mood and personality disorders," which is plainly an improper attempt to try to show that Plaintiff would have consented to the Defendant and is outside the scope of what an expert can testify to; (4) "[w]hether Plaintiff's participatory use of ayahuasca had the potential to distort her recollection of her allegations against Defendant. As detailed *supra*, Dr. Thames is not an expert in ayahuasca, nor did she ever speak to Plaintiff about its use or its effect on her.  Dr. Thames cannot speak to the effect of ayahuasca in general in any expert capacity, and she certainly cannot testify that it had the potential to specifically distort Plaintiff's recollection of the assault; (5) "[w]hether Plaintiff reporting multiple sexual assaults subsequent to the alleged incident is consistent with scientifically understood patterns of sexual assault victim behavior and (6) ["h]ow Plaintiff's self-reported history of repeated instances

of rapidly forming romantic attachments, abrupt dissolution of those relationships, and ensuing feelings of abandonment comport with the presentation of her allegations against Defendant. Topics (5) and (6) are improperly attempting to use Dr. Thames' testimony to argue that the assault either did not happen and/or characterize Plaintiff as someone who lies. While Dr. Thames can opine about Plaintiff's mental state and the extent it was impacted by an alleged sexual assault; she cannot opine about Plaintiff's credibility, which topics (5) and (6) are designed to do. See Dkt. No. 79.

As a result, Dr. Thames testimony, if permitted, should be limited to her assessment of Plaintiff's emotional state and the impact of the alleged assault.

## II.   Plaintiff's Addition of Two Exhibits

On September 15, 2025, Plaintiff's counsel informed Defendant that Plaintiff intended to add an additional exhibit (which would be Plaintiff's Exhibit 14) to the exhibit list and asked Defendant to provide any objections so that we could properly reflect the objection when Plaintiff requested permission from the Court. Ex. 2. Defendant responded, in part, that he did not "authorize [Plaintiff] to amend the Joint Exhibit List or to otherwise suggest to the Court that Defendant has agreed that [Plaintiff] may add an Exhibit or amend the Joint Exhibit List" (emphasis in original). Id. Defendant then offered to discuss the matter the following morning. Id. Plaintiff confirmed that we had no intention of suggesting that Defendant agreed to the addition of the exhibit but wanted to provide the opportunity for Defendant to provide any objections and offered a time to discuss. Id. Defendant said he would reach out to Plaintiff's counsel when he was available, but later said he could not speak until the following day. Id. On September 16, 2025, Plaintiff's counsel attempted to schedule a time to speak again but received no response. Id. On September 18, 2025, Plaintiff's counsel again reached out to Defendant's counsel

about this issue in addition to others, and on September 19, 2025, Defendant's counsel responded that he "declines [Plaintiff's] request" to add an additional exhibit and stated that "we do not need to have a call." <u>Id.</u>  To be clear, Plaintiff's proposed Exhibit 14 is not a new document; it was produced in the routine course of discovery and it was described to Defendant's expert witness.  There would be no prejudice to Defendant with the inclusion of Exhibit 14.

Similarly, in further reviewing Defendant's expert report and Rule 412(b) motion, Plaintiff's counsel realized that the first three pages of the document that Defendant included in the Joint Exhibit List as Defendant's Exhibit 159 were missing from the exhibit.  Notably, Defendant's expert report specifically identifies that she reviewed the pages missing from Exhibit 159, and the same pages are included as Exhibit B to Defendant's Rule 412(b) motion.  As a result, on September 18, 2025, Plaintiff proposed adding the missing three pages as Plaintiff's Exhibit 15.  <u>See</u> Ex. 3.  Defendant refused to confirm either his agreement to the admissibility of the document or its inclusion as one of Plaintiff's exhibits.  Again, there would be no prejudice to Defendant, as the document was provided in the regular course of discovery and Defendant's expert witness not only relied upon it, but also quoted from it in her expert report.  Moreover, it would be prejudicial for Defendant to cherry pick specific pages of Ms. LeMaistre's medical record while attempting to prevent Ms. LeMaistre from introducing pages from the same medical record.

### III. Exhibit Redactions

As a result of the Court's motion in limine decisions, Plaintiff explained to Defendant that we were going to propose redactions to exhibits; Defendant's counsel did not state any disagreement with the approach during the phone call and, from Plaintiff's perspective, were in agreement with that approach. However, after Plaintiff provided our proposed redactions to Defendant, Mr. Hinkle suddenly took

the position that such an approach was improper, falsely accused Plaintiff's counsel of not informing Defendant that we intended to propose redactions, and stated that they rejected Plaintiff's proposed redactions and, instead, took the position that each party must simply make sure that no precluded evidence is presented to the jury. In response, Plaintiff's counsel said that such an approach is not appropriate because once an exhibit is entered into evidence, it becomes available for the jury to review during deliberations in its entirety and, as such, if there is any precluded material in a proposed exhibit, that exhibit cannot be admitted without redaction. Confusingly, on September 20, 2025, Defendant's counsel emailed Plaintiff to say that "the parties have the right and the obligation to redact any Exhibit for the purpose of complying with the Court's orders." See Ex. 2. When we reminded defense counsel that we had already proposed redactions and that they should simply raise any disagreements with our proposals, we received no response. Id.

Although Plaintiff regrets having to bring this issue before the Court, as it should be something easily agreed upon between Counsel, the parties will unfortunately require guidance from the Court about how to proceed with exhibit redactions.

### IV. Providing the Jury with a Written Transcript of the Audio Seeks to Introduce at Trial

Plaintiff believes that it would assist the jury if they were provided with a written transcript of the audio exhibit that Defendant included on his exhibit list. As such, on September 18, 2025, Plaintiff asked Defendant whether there was any objection to offering the jury the transcript. See Ex. 3. Defendant failed to respond. When Plaintiff again followed up on the issue, Defendant's counsel flippantly responded that he was "not interested" in adding the transcript as an exhibit, but did

PLAINTIFF'S PROPOSED TOPICS FOR DISCUSSION AT THE HOUSEKEEPING SESSION PRIOR TO THE START OF TRIAL

not provide a reason. See Ex. 2. Plaintiff requests a court ruling allowing the transcript to be entered into the record if the underlying recording is admitted.

Dated: September 22, 2025

**WIGDOR LLP**

By: _____
Michael J. Willemin
Monica Hincken

85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mhincken@wigdorlaw.com

**GIRARD BENGALI, APC**

Omar H. Bengali
Robert J. Girard II

355 S Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (323) 302-8300
Facsimile: (323) 302-8310
obengali@girardbengali.com
rgirard@girardbengali.com

*Attorneys for Plaintiff Vanessa LeMaistre*

# **PROOF OF SERVICE**

I, Edwige Rousseau, declare as follows:

On September 22, 2025 I served **Plaintiff's Housekeeping Motion** on the parties stated below, by electronic mail on the following individuals:

Justin H. Sanders, Esq.
Lawrence C. Hinkle II, Esq.
Bobby L. Daniels, Jr., Esq.
Stephanie Jones Nojima, Esq.
SANDERS ROBERTS
1055 W 7th St, Suite 3200
Los Angeles, CA 90017
T: (213) 426-5000
jsanders@sandersroberts.com
lhinkle@sandersroberts.com
bdaniels@sandersroberts.com
sjonesnojima@sandersroberts.com

*Attorneys for Defendant*

Executed on September 22, 2025 under penalty of perjury under the laws of *the state of California.*

_____
Edwige Rousseau

PLAINTIFF'S PROPOSED TOPICS FOR DISCUSSION AT THE HOUSEKEEPING SESSION PRIOR TO THE START OF TRIAL

12